UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

SECURITIES AND EXCHANGE COMMISSION,

                                          Plaintiff,

                    -v-

HILL INTERNATIONAL, INC., RONALD EMMA,
and NICHOLAS TORNELLO,

                                          Defendants.

20 Civ. 447 (PAE)

OPINION & ORDER

---

PAUL A. ENGELMAYER, District Judge:

        This recently filed case entails claims of accounting fraud and disclosure violations by

the Securities and Exchange Commission ("SEC") against Hill, Inc. ("Hill") and two of Hill's

accounting officials.  Following settlements, only one defendant remains: Nicholas Tornello.

Tornello now moves for transfer of this case pursuant to 28 U.S.C. § 1404(a).  For the reasons

that follow, the Court grants that motion, and transfers this case to the United States District

Court for the Eastern District of Pennsylvania.

## I.      Background

### A.      The SEC's Complaint

        On January 16, 2020, the SEC's Philadelphia regional office filed a Complaint in this

District against Hill, Ronald Emma, and Tornello.  Dkt. 1 ("Cmplt.").  The Complaint described

Hill as a publicly traded project and construction management consulting business incorporated

in Delaware, with a principal place of business in Philadelphia.  *Id.* ¶ 17.  It described Emma, age

68, as a resident of Moorestown, N.J., who had served as Hill's chief accounting officer between

1980 and his retirement in February 2017.  *Id.* ¶ 18.  It described Tornello, age 32, as a resident

of Runnemede, N.J., who had served at Hill, between 2009 and 2017, in a series of roles with

growing responsibilities.  *Id.* ¶ 19.  These roles included staff accountant, senior accountant,

senior financial analyst, director of internal reporting (starting in 2015), and assistant corporate

controller (from 2016 until he left the company in March 2017).  *Id.*

Broadly speaking, the Complaint alleged that Hill had made repeated reporting errors and

failed to maintain adequate books and records, and that this misconduct had led the company to

issue materially false and misleading financial statements between May 2014 and March 2017.

*Id.* ¶ 1.  These resulted, in May 2018, in Hill's restating its financial statements for the years

2014, 2015, 2016, and the first quarter of 2017.  *Id.* ¶ 2.

Relevant here, the Complaint alleged that the restatement corrected material errors in

Hill's books and records that Emma and Tornello had identified in May 2014 but had failed to

correct.  *Id.* ¶ 3.  Specifically, it alleged that Tornello had identified approximately $5 million in

foreign currency exchange losses on intercompany obligations that were incorrectly recorded on

Hill's balance sheet and which should have been reflected on (and which would have negatively

impacted) Hill's income statement.  *Id.* ¶ 4.  Instead, between May 2014 and October 2014,

Tornello wrote emails to Emma and others describing a plan—in breach of generally accepted

accounting principles ("GAAP")—to recognize $5 million in such losses over time.  *Id.* ¶¶ 5–6.

It alleged that Emma and Tornello failed to correct these errors, rendering Hill's income

statement and its books and records false, and that they failed to disclose the improper

accounting treatment, thereby violating internal controls and policies.  *Id.* ¶¶ 8–9.  During this

time, the Complaint alleged, Hill, relying on its materially incorrect financial statements, raised

more than $40 million from unsuspecting investors via a secondary offering of common stock.

*Id.* ¶ 9.  It alleged that others at the company discovered the errors after Emma retired and

Tornello left the company in early 2017.  *Id.* ¶ 10; *see also id.* ¶¶ 20–53 (describing the above events in more detail).

Based on these allegations, the SEC brought claims against Hill under § 17(a)(2) and (3) of the Securities Act of 1933, 15 U.S.C. § 77q(a)(2)–(3) (the "Securities Act"), and § 13(a), (b)(2)(A) and (b)(2)(B) of the Securities Exchange Act of 1934, 15 U.S.C. § 78m(a) and (b)(2)(A)–(B) (the "Exchange Act"), and rules promulgated thereunder.  Cmplt. ¶¶ 11–12, 72–104.  It further brought claims against Emma and Tornello under §§ 13(a), 13(b)(2), 13(b)(5), and 17(a)(3) of the Securities Act and § 13(b)(5) of the Exchange Act and rules promulgated thereunder.  *Id.*  The Complaint sought permanent injunctive relief from, and the payment of civil money penalties by, Hill, Emma, and Tornello.

As its basis for venue in this District, the Complaint cited § 22 of the Securities Act, 15 U.S.C. § 77v(a), which provides, *inter alia*, that "[a]ny such suit or action may be brought in the district wherein the defendant is found or is an inhabitant or transacts business, or in the district where the offer or sale took place," and §§ 21(d), 21(e), and 27 of the Exchange Act, 15 U.S.C. §§ 78u(d), 78u(e), and 78aa, the latter of which similarly provides.  *Id.* ¶ 14.  It alleged that defendants' conduct had taken place in connection with the offer and sale of Hill securities, which were publicly traded on the New York Stock Exchange, located in this District.  *Id.* ¶ 15.  Further, the Complaint alleged, during the relevant period, Hill had maintained an office and transacted business in this District.  *Id.*

### B.      The SEC's Settlements with Hill and Emma

On January 31, 2020, the SEC filed proposed "no admit / no deny" consent judgments with the Court reflecting settlements that it had reached with defendants Hill and Emma.  *See* Dkt. 14 (Hill); Dkt. 18 (Emma).  Each consent judgment enjoined the defendant from future violations of the above-identified provisions of the Securities Act and the Exchange Act.  *See id.*

Hill and Emma agreed to pay civil penalties of, respectively, $500,000 and $75,000. *Id.* The Court approved both judgments, terminating the cases against those defendants. *See* Dkt. 29 (Hill); Dkt. 42 (Emma).

### C.     Tornello's Motion to Transfer Venue

On March 23, 2020, Tornello answered the Complaint, Dkt. 43, and moved to transfer venue, pursuant to 28 U.S.C. § 1404(a), to either the Eastern District of Pennsylvania or the Camden Division of the District of New Jersey, Dkt. 44. In support, Tornello submitted a memorandum of law, Dkt. 45 ("Tornello Mem."), and factual declarations from himself, Dkt. 46 ("Tornello Decl."), and his counsel, Antonio Pozos, Esq., Dkt. 47 ("Pozos Decl."). On April 6, 2020, the SEC submitted a memorandum of law, Dkt. 49 ("SEC Mem."), and the declaration of its counsel, John V. Donnelly III, Esq., Dkt. 50 ("Donnelly Decl."), in opposition. On April 13, 2020, Tornello submitted a reply. Dkt. 53 ("Tornello Reply").

## II.     Discussion

### A.     Applicable Legal Standards for Motions to Transfer Under § 1404

28 U.S.C. § 1404(a) provides that, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." Section 1404 "gives district courts wide latitude to decide whether to transfer venue." *Everlast World's Boxing Headquarters Corp. v. Ringside, Inc.*, 928 F. Supp. 2d 735, 742 (S.D.N.Y. 2013) (citing *In re Cuyahoga Equip. Corp.*, 980 F.2d 110, 116–17 (2d Cir. 1992); *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988); *Guardian Life Ins. Co. of Am. v. Hernandez*, No. 11 Civ. 2114 (SAS), 2011 WL 3678134, at *2 (S.D.N.Y. Aug. 22, 2011)).

Courts undertake a two-step inquiry to decide motions to transfer venue under § 1404(a). *Enigma Software Grp. USA, LLC v. Malwarebytes, Inc.*, 260 F. Supp. 3d 401, 407 (S.D.N.Y. 2017) (citing *Everlast*, 928 F. Supp. 2d at 743). The Court first must determine "whether the action

could have been brought in the transferee district." *Id.* (quoting *Everlast*, 928 F. Supp. 2d at 743). If so, the Court then must determine "whether transfer would be an appropriate exercise of the Court's discretion." *Everlast*, 928 F. Supp. 2d at 743 (quoting *Robertson v. Cartinhour*, No. 10 Civ. 8442 (LTS), 2011 WL 5175597, at *3 (S.D.N.Y. Oct. 28, 2011)).

To assess whether transfer is an appropriate exercise of the Court's discretion, the Court must "balance various factors: (1) the convenience of the witnesses; (2) the convenience of the parties; (3) the location of relevant documents and the relative ease of access to sources of proof; (4) the locus of operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) the forum's familiarity with the governing law; (8) the weight accorded the plaintiff's choice of forum; and (9) trial efficiency and the interests of justice." *Everlast*, 928 F. Supp. 2d at 743 (citing *Robertson*, 2011 WL 5175597, at *4); *Kreinberg v. Dow Chem. Co.*, 496 F. Supp. 2d 329, 330 (S.D.N.Y. 2007); *Reliance Ins. Co. v. Six Star, Inc.*, 155 F. Supp. 2d 49, 56–57 (S.D.N.Y. 2001).

In evaluating these factors on a motion to transfer venue, the Court may consider factual submissions, including declarations, by defendants, who have the burden to justify a change of venue. *See, e.g.*, *Factors Etc., Inc. v. Pro Arts, Inc.*, 579 F.2d 215, 218 (2d Cir. 1978), *overruled on other grounds*, *Pirone v. MacMillan, Inc.*, 894 F.2d 579 (2d Cir. 1990); *Everlast*, 928 F. Supp. 2d at 737 n.1; *MasterCard Int'l, Inc. v. Lexcel Sols., Inc.*, No. 03 Civ. 7157 (WHP), 2004 WL 1368299, at *6 (S.D.N.Y. June 16, 2004) (relying on defendant's declarations in granting motion to transfer, while denying motion to dismiss for lack of personal jurisdiction).

### B.    Analysis

#### 1.    Propriety of Venue in the Proposed Transferee Districts

At the threshold, it is undisputed that, much as venue was statutorily proper in this District, this case could also properly have been brought in either of the proposed transferee

districts—the Eastern District of Pennsylvania or the District of New Jersey.  Under both the

Exchange Act and the Securities Act, a civil suit may be brought "in the district wherein the

defendant is found or transacts business," 15 U.S.C. §§ 77v(a), 78aa(a), and under the Exchange

Act, a civil suit may also be brought in any district "wherein any act or transaction constituting

the violation occurred," 15 U.S.C. § 78aa(a).  "Courts have interpreted this [latter] language to

mean that the commission of any non-trivial act in the district establishes venue for an Exchange

Act claim, even if this act does not go to the core of the alleged violation."  *Ahrens v. Cti

Biopharma Corp.*, No. 16 Civ. 1044 (PAE), 2016 WL 2932170, at *3 (S.D.N.Y. May 19, 2016)

(citation omitted).  And "[w]hen claims are asserted under both the 1933 and 1934 Acts, it is

sufficient if venue is established under the 1934 Act."  *Dopp v. Am. Elec. Labs., Inc.*, 55 F.R.D. 151,

155 n.11 (S.D.N.Y. 1972).  And "where venue is proper for one defendant" pursuant to the

Exchange Act, "venue is proper for all."  *Pan Int'l Gaming, Inc. v. Tropical Int'l Sports, Inc.*,

No. 99 Civ. 9182 (SHS), 2000 WL 60191, at *1 (S.D.N.Y. Jan. 25, 2000).

  Here, Hill's headquarters during the relevant period spanned both proposed transferee

districts—initially Marlton, N.J., and, beginning in April 2015, Philadelphia, PA.  Tornello Decl.

¶ 3.  Both Tornello and Emma were based at these headquarters, and Tornello largely performed

his accounting duties from Hill's headquarters.  *See id.* ¶¶ 3–5, 9–10.  And Hill maintained its

paper and electronic accounting-related books and records at, and issued public financial statements,

securities offerings, and SEC filings from, these headquarters.  *Id.* ¶¶ 8–9.  Venue is therefore

proper in either proposed transferee district because, among other things, "act[s] or transaction[s]

constituting the [alleged] violation occurred" in those districts, 15 U.S.C. § 78aa(a); all defendants

transacted business from those districts during the period that the SEC's Complaint puts at issue;

and defendant Hill is currently headquartered in the Eastern District of Pennsylvania and defendant Tornello currently resides in New Jersey.  *See* Cmplt. ¶ 17; Tornello Decl. ¶¶ 2–5, 8–10.

### 2. Evaluation of Factors Bearing on Exercise of Court's Discretion as to Venue Transfer

The Court accordingly turns to assessing and balancing the nine factors germane to the Courts exercise of discretion.  As in previous cases, the Court has found it useful to sort these factors into those favoring transfer, those disfavoring transfer, and those that are neutral.  While the Court has considered both proposed transferee districts, the Court, as between them, regards the Eastern District of Pennsylvania, where Hill has been based since 2015, as a more compelling alternative to this District than the District of New Jersey.  The following analysis, accordingly, principally evaluates the relative merits of this District and the Eastern District of Pennsylvania as the situs for this litigation.

With that preface, the Court's assessment is that four factors, to varying degrees, favor transfer to the Eastern District of Pennsylvania; that one factor favors retention of the case in this District; and that four factors are neutral.

### 3. Factors Favoring Transfer

#### a. *Locus of Operative Facts*

The locus of operative facts is a "primary factor in determining a § 1404(a) motion to transfer."  *Enigma*, 260 F. Supp. 3d at 409 (quoting *Smart v. Goord*, 21 F. Supp. 2d 309, 316 (S.D.N.Y. 1998)); *800-Flowers, Inc. v. Intercont'l Florist, Inc.*, 860 F. Supp. 128, 134 (S.D.N.Y. 1994).  This factor "substantially favors transfer from this district when a party 'has not shown that any of the operative facts arose in the Southern District of New York.'"  *SBAV LP v. Porter Bancorp, Inc.*, No. 13 Civ. 372 (PAE), 2013 WL 3467030, at *4 (S.D.N.Y. July 10, 2013) (quoting *Dr. Boy, GmbH v. Nationwide Ins.*, No. 96 Civ. 3217 (AGS), 1996 WL 350699, at *2

(S.D.N.Y. June 25, 1996)).  "[W]here there is no material connection between this district and the operative facts[,] the interests of justice require the transfer of the action."  *Cohn v. Metro. Life Ins., Co.*, No. 07 Civ. 0928 (HB), 2007 WL 1573874, at *3 (S.D.N.Y. May 31, 2007) (citation and internal brackets omitted).  "To determine the locus of operative facts, a court must look to the site of the events from which the claim arises," *AVEMCO Ins. Co. v. GSV Holding Corp.*, No. 96 Civ. 8323 (LAP), 1997 WL 566149, at *6 (S.D.N.Y. Sept. 11, 1997) (internal quotation marks and citation omitted), and focus on "the degree of relationship between the forum and the cause of action."  *CYI, Inc. v. Ja–Ru, Inc.*, 913 F. Supp. 2d 16, 21 (S.D.N.Y. 2012).

As to this factor, the central facts giving rise to the SEC's claims occurred in Hill's headquarters, which, during the 2014–2018 period that the SEC's Complaint makes central, were located in Marlton, N.J., until April 2015, and thereafter in Philadelphia, PA.  As the Complaint reflects, this case turns on developments within Hill and in particular within its accounting and finance departments.  To this end, the Complaint chronicles at length evidence, including extensive intra-company communications, allegedly reflecting Tornello's (and Emma's) appreciation of Hill's failure to account properly for the foreign currency exchange losses, and thereafter, the alleged scheme to perpetuate and limit the income-statement impact of these losses by wrongly absorbing them into income over time, rather than immediately.  *See, e.g.*, Cmplt. ¶¶ 4–8, 29–46.  The scheme as alleged included misleading communications with the company's CFO, *see, e.g.*, *id.* ¶ 44, and with its outside auditors, *id.* ¶ 46.  These core events— the errant accounting for losses and the internal scheme within the accounting department to conceal it from others within and outside the company—were centered within company headquarters, where the two alleged malefactors, Tornello and Emma, worked.

To be sure, the SEC identifies ways in which the scheme touched New York City. Hill's stock was traded on the Manhattan-based New York Stock Exchange. *Id.* ¶ 17. The SEC further alleges that outsiders to the company received the false financial statements developed by Tornello and Emma. It alleges that Hill raised more than $40 million from an August 2014 secondary offering of common stock, *id.* ¶ 47, and that "reasonable investors would have considered and relied on the information in these public filings in deciding whether to buy or sell public securities," *id.* ¶ 48. The SEC proffers that the investors and analysts who accessed and traded in reliance on Hill's false financial statements included investors and analysts located in the Southern District of New York; that two of the six firms that underwrote the secondary offering were based in New York City; and that Hill, in connection with that offering, used an investor relations and financial communications firm based in New York City. See SEC Mem. at 1–2. Notably, however, the SEC does not allege that either Emma or Tornello—the sole persons in the company alleged to have been aware of Hill's bogus accounting—personally engaged with, let alone uttered or disseminated any false or misleading statements to, any such persons. And although the SEC notes that Hill's outside auditing firm, EisnerAmper, was headquartered in New York, it does not allege that any activities relating to the audit occurred in New York City. At most as to the audit, the SEC notes that the lead engagement partner and the manager who worked on the audit were based in Iselin, N.J., located in a northern part of the state closer to New York City than to Philadelphia. *See* SEC Mem. at 14. The SEC does not, however, allege that EisnerAmper conducted the audit of Hill other than onsite at its issuer client, as is customary. The SEC's Complaint tellingly does not allege that either individual defendant took any action within New York City, or indeed that either was ever even present in this District in connection with the company.

The Court accordingly is unpersuaded by the SEC's characterization of this factor as merely "neutral." *See* SEC Mem. at 13.  It plainly is not.  The Court instead finds that, while limited events at issue occurred in New York City and while the effects of the scheme alleged here were experienced broadly and not merely at corporate headquarters, the "center of gravity" of this accounting fraud case unavoidably is the location at which the accounting fraud took place.  *See Am. S.S. Owners Mut. Prot. & Indem. Ass'n, Inc. v. Lafarge N. Am., Inc.*, 474 F. Supp. 2d 474, 485 (S.D.N.Y. 2007), *aff'd sub nom. N.Y. Marine & Gen. Ins. Co. v. Lafarge N. Am., Inc.*, 599 F.3d 102 (2d Cir. 2010).  On the undisputed facts, that location was the corporate headquarters where Hill's accounting department was located, and where Tornello and Emma allegedly schemed to account falsely for the foreign exchange losses.  Because Hill's headquarters shifted from southern New Jersey to Philadelphia during the course of the alleged scheme, this factor favors either proposed transferee district, but not this District.[1]  Accordingly, the Court finds that this significant factor favors transfer.

---

[1] *See In re Hanger Orthopedic Grp., Inc. Sec. Litig.*, 418 F. Supp. 2d 164, 168 (E.D.N.Y. 2006) ("There is no per se rule requiring or presumptively favoring the transfer of a securities-fraud action to the district where the issuer is headquartered.  Nevertheless, as a practical matter, such transfers are routine." (internal citation omitted)); *see also, e.g., Bent v. Zounds Hearing Franchising, LLC*, No. 15 Civ. 6555 (PAE), 2016 WL 153092, at *5 (S.D.N.Y. Jan. 12, 2016) ("Misrepresentations and omissions are deemed to 'occur' in the district where they are transmitted or withheld, not where they are received." (citation omitted)); *City of Pontiac Gen. Empls. Ret. Sys. v. Dell Inc.*, No. 14 Civ. 3644 (VSB), 2015 WL 12659925, at *6 (S.D.N.Y. Apr. 30, 2015) ("Defendants' alleged misrepresentations and omissions"—nearly all of which occurred at company headquarters in Austin, Texas—"are the gravamen of this case, and, contrary to Plaintiff's arguments, the locus of operative facts is not shifted to New York merely because Dell stock was traded on the NASDAQ and certain analysts who followed Dell were based in New York"); *Berger v. Cushman & Wakefield of Pa., Inc.*, No. 12 Civ. 9224 (JPO), 2013 WL 4565256, at *10 (S.D.N.Y. Aug. 28, 2013) (rejecting plaintiffs' argument that locus of operative facts was New York because their "injuries have a direct connection to New York," and holding that locus of operative facts was where fraud was planned and executed); *SEC v. Kearns*, No. 09 Civ. 2296 (DLC), 2009 WL 2030235, at *3 (S.D.N.Y. July 14, 2009) ("Rather than evincing any meaningful connection to this forum, the allegations in the complaint

    *b.*  *Convenience of Witnesses*

  "The convenience of witnesses is an important consideration, and has often been described as the single most important § 1404(a) factor." *Everlast*, 928 F. Supp. 2d at 743; *see Filmline (Cross-Country) Prods., Inc. v. United Artists Corp.*, 865 F.2d 513, 520 (2d Cir. 1989); *D'Anton Jos, S.L. v. Doll Factory, Inc.*, 937 F. Supp. 320, 323 (S.D.N.Y. 1996); *Pilates, Inc. v. Pilates Inst., Inc.*, 891 F. Supp. 2d 175, 183 (S.D.N.Y. 1995); *see also* 15 CHARLES ALAN WRIGHT, ET AL., FEDERAL PRACTICE AND PROCEDURE § 3851 (3d ed. 2007) (convenience of witnesses "[o]ften cited as the most important factor in passing on a motion to transfer under § 1404(a)" and "one of the [factors] most frequently mentioned by courts").

  For much the same reasons as the locus of operative facts, this factor strongly favors transfer. That is because, while both the SEC and Tornello recite the names of possible trial witnesses, the factual disputes on which a trial in this case would likely turn center on internal events and communications within Hill's accounting department. Based on the SEC's Complaint, the two most central such persons are, of course, Tornello and former chief

---

demonstrate that the operative facts on which the complaint is brought took place principally in New Jersey. New Jersey is where MedQuist is headquartered, where the fraudulent billing practice was developed and implemented, and where the two defendants worked and allegedly participated in the scheme, for example by misleading the independent auditors and by preparing and reviewing the misleading public filings. Under these circumstances, the SEC's choice of forum is entitled to less deference."); *id.* ("If trading on a New York-based stock exchange were enough by itself to avoid transfer of venue to other districts, it would be virtually impossible to transfer SEC enforcement actions involving publicly-traded companies to other districts."); *Azari v. B&H Photo Video*, No. 06 Civ. 7825 (DLC), 2007 WL 13101, at *2 (S.D.N.Y. Jan. 3, 2007) (where "the critical decisions that underlie the plaintiffs' claims were made outside New York, the plaintiffs' choice of forum is entitled to reduced deference"); *In re Stillwater Min. Co. Sec. Litig.*, No. 02 Civ. 2806 (DC), 2003 WL 21087953, at *4 (S.D.N.Y. May 12, 2003) (concluding that Montana—where defendant's offices, officers, and employees were located—was the locus of operative facts in a federal securities fraud class action); *SEC v. Lybrand*, No. 00 Civ. 1387 (SHS), 2000 WL 913894, at *6 (S.D.N.Y. July 6, 2000) ("This factor weighs in favor of New York as a forum . . . [where] the transactions that constituted the core of the fraudulent scheme under the SEC's theory of liability were undertaken by [defendant] in New York.").

accounting officer Emma, both of whom worked out of corporate headquarters and reside

nearby. Tornello has further helpfully identified by name and title eight other persons with

whom, in addition to Emma, he worked closely at Hill. *See* Tornello Decl. ¶ 5. These include

the U.S. comptroller, the vice president of financial planning and analysis, the vice president of

external reporting, the senior vice president and chief financial officer, the senior vice president

and treasurer, the finance director (Americas) and corporate comptroller, the vice president of

international finance, and the vice president of taxation. *Id.* Each, Tornello attests without

contradiction, worked out of corporate headquarters. *Id.* These persons reside in the greater

Philadelphia area, including southern New Jersey; none reside in New York. *See* Pozos Decl.

¶ 3(a)–(i).[2] To be sure, as the SEC notes, Tornello does not proffer what the testimony of these

persons at trial would be. However, the SEC's Complaint itself references Hill's chief financial

officer, a corporate vice president, and its corporate finance department, *see, e.g.*, Cmplt. ¶¶ 42,

44, 50, and broadly faults Tornello for failing to disclose the accounting errors within the

company, *id.* ¶ 45. Tornello's counsel represents that, in pre-suit testimony, Tornello was asked,

and testified, about numerous such personnel at Hill, including nearly all the persons he

identifies as living in the Philadelphia area. *See* Tornello Reply at 6. Tornello's premise that at

least some of the corporate personnel he names and who reside in or around Philadelphia will be

central witnesses at trial is therefore persuasive.

The SEC does not contend that New York is a more convenient venue for witnesses. It

pronounces this factor "neutral." To offset Emma, Tornello, and the company witnesses, it states

---

[2] Tornello has further identified four individuals from Hill, based abroad, with whom he worked.
*See* Tornello Decl. ¶ 6. These persons continue to reside abroad. *See* Pozos Decl. ¶ 3(j)–(m).
Because these persons do not reside in either this District or either proposed transferee district,
the Court treats them as irrelevant to this transfer factor.

that—depending on what issues prove disputed at trial—it may have occasion to call New York-based underwriters for Hill's secondary stock offering, or analysts who followed the company. SEC Mem. at 13–14.  The SEC does not, however, represent that any of these persons dealt with Tornello or Emma.  And the prospect that the testimony of these persons, about their receipt of or reactions to Hill's financial statements, will prove consequential at trial appears conjectural, if not improbable.  The SEC does note that the two company auditors who dealt with Tornello— and to whom Tornello and Emma did not disclose the errant accounting—reside in northern New Jersey, closer to this District than to the Eastern District of Pennsylvania.  *Id.* at 14.  It is reasonable to expect these persons to testify.  But the marginal convenience to them does not outweigh the benefits to the potentially many company witnesses of trying the case near where they work and reside.

The Court accordingly holds that this important factor favors transfer.  *See, e.g.*, *Hamilton v. Mead*, No. 18 Civ. 9734 (CM), 2019 WL 949009, at *5–6 (S.D.N.Y. Feb. 14, 2019); *Monfried v. Sigma Fin. Corp.*, No. 15 Civ. 2806 (VSB), 2016 WL 9724977, at *2–3 (S.D.N.Y. June 14, 2016); *Garcia v. Pearson Educ., Inc.*, No. 15 Civ. 7289 (KPF), 2016 WL 5921083, at *6 (S.D.N.Y. Oct. 7, 2016); *Steck v. Santander Consumer USA Holdings Inc.*, No. 14 Civ. 6942 (JPO), 2015 WL 3767445, at *3–5 (S.D.N.Y. June 17, 2015); *Viacom Int'l, Inc. v. Melvin Simon Prods., Inc.*, 774 F. Supp. 858, 868 (S.D.N.Y. 1991) ("The core determination under § 1404(a) is the center of gravity of the litigation, a key test of which is the convenience of witnesses.")

### c.    Convenience of the Parties

Although far less important than the preceding two factors, this factor also favors transfer.  Tornello does not reside in New York; he both lives and works in the greater Philadelphia area.  Tornello Decl. ¶ 2; Cmplt. ¶ 19.  He would therefore need either to travel at length each day from his home to and from trial, or stay in a hotel in New York City, were the

case to be tried here.  And counsel for all parties are located in Philadelphia, including counsel

for the SEC, which is represented here by attorneys from the agency's Philadelphia office.  *See*

Dkt. 1.  Trial in this District would therefore necessarily impose additional travel and expense

burdens on them.  The SEC's counter-argument in support of its claim that this factor is neutral—

to wit, that all counsel are admitted to the bar of this Court, SEC Mem. at 15—is not responsive

to this concern.  The convenience of the parties therefore favors transfer.  *See Ritchie Capital*

*Mgmt., LLC v. U.S. Bank Nat. Ass'n*, No. 14 Civ. 8513 (PAE), 2015 WL 1611391, at *5

(S.D.N.Y. Apr. 10, 2015) ("No party resides in New York or has any apparent connection to New

York . . .  A transfer, on balance, would therefore be much more convenient for the defendant,

while not enhancing (or hindering) plaintiffs' convenience.  Under such circumstances, this factor

'clearly' supports a transfer."); *see also Lapa v. Massage Envy Franchising, LLC*, No. 18 Civ. 7403

(JFK), 2019 WL 2004072, at *4 (S.D.N.Y. May 7, 2019); *Enigma*, 260 F. Supp. 3d at 411; *Pence*

*v. Gee Grp., Inc.*, 236 F. Supp. 3d 843, 856–57 (S.D.N.Y. 2017); *Cummings v. Chesapeake Energy*

*Corp.*, No. 16 Civ. 2338 (VEC), 2016 WL 9527989, at *2 (S.D.N.Y. June 7, 2016); *In re*

*ChannelAdvisor Corp. Sec. Litig.*, No. 15 Civ. 506 (AJN), 2015 WL 4064625, at *2

(S.D.N.Y. July 2, 2015).

d.      <em>Relative Means of the Parties</em>

Tornello argues that this factor favors transfer, because he has lesser means than the SEC,

and would benefit from the ability to litigate this matter in or near to his residence.  Tornello

Mem. at 15.  The SEC represents that Tornello's legal expenses are being covered by insurance,

and therefore argues that this factor is neutral.  SEC Mem. at 14–15 (citing Donnelly Decl. ¶ 22).

The Court finds this factor, although of limited importance here, to favor transfer.  Drawing on

its experience in prior practice, the Court is mindful that insurance carriers do not invariably

cover all costs incurred by an indemnified party; that certain costs (*e.g.*, hotel, meal and

14

transportation costs of the indemnified party) may fall outside of an insurer's obligation to cover the party's legal expenses; and that, depending on the outcome of a proceeding, the insurer that has advanced coverage costs may then assert a right, in whole or part, to disclaim coverage and seek repayment.  In contrast, the SEC does not make any argument that its means are limited.  Its preference that its Philadelphia-based counsel try this case in New York suggests that cost considerations are not a concern for the agency in this case.  This factor therefore favors transfer.

### 4.       Factor Opposing Transfer: Plaintiff's Choice of Forum

The sole factor that disfavors transfer is the SEC's choice of this forum.  "A plaintiff's choice of forum is accorded considerable weight in the § 1404(a) balancing test."  *SBAV LP*, 2013 WL 3467030, at *11.  However, as this and other courts have recognized, "that choice merits less deference" where "'the connection between the case and the chosen forum is minimal.'" *Enigma*, 260 F. Supp. 3d at 412 (internal citation omitted) (quoting *Everlast*, 928 F. Supp. 2d at 748).  Here, the SEC's reasons for choosing this forum are elusive.  Insofar as the core of the operative facts, the key witnesses, the defendants, and all counsel are situated in the transferee districts and not in New York, the fact that the securities markets and secondary witnesses (*e.g.*, underwriters) are situated in his District does not coherently explain why the SEC favors this forum.

Accordingly, the SEC's "choice of forum does not alone 'shift, or come close to shifting, the balance of factors so as to favor this District.'"  *Id.* (quoting *SBAV LP*, 2013 WL 3467030, at *11); *see Everlast*, 928 F. Supp. 2d at 748 (granting motion to transfer when plaintiff's choice of forum "is offset, and then some, by the other factors addressed above").

### 5.       Neutral Factors

The remaining factors are neutral and do not substantially affect the transfer analysis.

The location of relevant documents and the relative ease of access to sources of proof does not materially favor or disfavor transfer.  While the records at issue predominantly appear to have been created and maintained at Hill's headquarters, the relevant materials appear by now to have been exchanged in discovery.  And, "[g]iven electronic discovery, and absent any concrete illustration of inconvenience to either side arising out of access to documents or other non-testimonial proof, this factor does not materially favor either venue."  *Everlast*, 928 F. Supp. 2d at 747; *see also Enigma*, 260 F. Supp. 3d at 412.

The availability of process to compel the attendance of unwilling witnesses also does not materially favor or disfavor transfer, as "neither party has persuasively identified particular witnesses likely to present attendance challenges."  *Id.* (brackets omitted) (quoting *SBAV LP*, 2013 WL 3467030, at *11).

The forum's familiarity with the governing law—"one of the least important factors in determining a motion to transfer," *ACE Am. Ins. Co. v. Bank of the Ozarks*, No. 11 Civ. 3146 (PGG), 2012 WL 3240239, at *13 (S.D.N.Y. Aug. 3, 2012) (citation omitted)—is also a neutral factor.  The SEC brings claims here under federal law.  There is no basis to conclude that this Court or one in a transferee district is materially more familiar than the other with the pertinent doctrine.

Finally, the paired factors of trial efficiency and the interests of justice are also neutral. There is no related litigation in either district that enhances efficiency here.  While the SEC notes that this Court approved the consent judgments with Hill and Emma, this minimal exercise did not give the Court any familiarity with this litigation.  The parties make competing arguments as to efficiency in general of the alternative fora, with Tornello arguing that courts in the transferee districts tend to process cases to judgment faster than those in this District, and the SEC arguing

16

that this particular Court tends to process cases at a faster clip than the average of courts in any of these districts.  *Compare* Tornello Mem. at 17–18, *with* SEC Mem. at 12.  Particularly given the present disruption of all courts occasioned by the COVID-19 public health emergency and the uncertain timetable at which normal operations, including supervision of jury trials, will resume, it is all the more conjectural which forum would prove the more efficient.

### 6.   Overall Assessment

The transfer factors in combination weigh in favor of transfer of this case to the Eastern District of Pennsylvania.  The factors of the locus of operative facts, convenience to the witnesses, convenience to the parties, and the relative means of the parties, all favor transfer, and outweigh the only countervailing factor, the SEC's choice of forum.  The Court therefore grants Tornello's motion pursuant to 28 U.S.C. § 1404(a).

## CONCLUSION

For the foregoing reasons, Tornello's motion to transfer venue pursuant to 28 U.S.C. § 1404(a) is granted.

The Clerk of Court is respectfully directed to terminate the motion pending at docket 44 and to transfer this case to the Eastern District of Pennsylvania.

SO ORDERED.

Paul A. Engelmayer
United States District Judge

Dated: April 28, 2020
        New York, New York